UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BERTHA E.,                                           Case No. 2:24-cv-00167-AR

           Plaintiff,                                **OPINION AND ORDER**

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

_____

**ARMISTEAD, Magistrate Judge**

       In this judicial review of the Commissioner's final decision denying Social Security benefits, Bertha E. (last name omitted for privacy) challenges the Administrative Law Judge's evaluation of her subjective symptom testimony, the lay witness testimony, and the medical expert testimony of Jerry Seligman, M.D. Those errors, plaintiff asserts, means that the ALJ's

Page 1 – OPINION AND ORDER

step-five finding is also in error. (Pl.'s Br. at 7.) As explained below, the Commissioner's decision is reversed, and this case is remanded for an immediate calculation of benefits.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on April 29, 2020, alleging disability beginning on April 30, 2010. (Tr. 73.) Her claim was initially denied on September 10, 2020, and again upon reconsideration on March 29, 2021. (Tr. 78-79, 88.) The ALJ held a hearing on January 11, 2023. (Tr. 40.) At the hearing, plaintiff amended her alleged onset date to May 23, 2012. (Tr. 45-46.)

In denying plaintiff's application, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured of June 30, 2016. (Tr. 28.) At step two, the ALJ determined that she had the following severe impairments: "diabetes mellitus and diabetic retinopathy." (Tr. 28.) At step three, the ALJ determined that her impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 29.)

As for the RFC, the ALJ found that plaintiff could perform light work with these other limitations:

> [She] can carry 20 pounds occasionally and 10 pounds frequently. [She] can stand or walk up to 6 hours in an 8-hour day. [She] can sit for at least 6 hours of an 8-

---

[1] The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and the parties have consented to jurisdiction by magistrate judge under 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER

> hour day. [She] can never climb ladders, ropes, or scaffolds, kneel crouch, and crawl. [She] can occasionally climb ramps and stairs, balance, and stoop. [She] must have no exposure to hazards such as unprotected heights and machinery with moving mechanical parts. [She] must avoid concentrated exposure to extreme cold, extreme heat, vibrations, humidity, and wetness.

(Tr. 30.) At step four, the ALJ determined that plaintiff is unable to perform her past relevant work as a forklift operator. (Tr. 32.) Considering her RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as production assembler, small parts assembler, and sub assembler.[3] (Tr. 33.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

\ \ \ \ \

\ \ \ \ \

---

[3]  As noted in *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022), the SSA has been working on a transition to a new Occupational Information System since 2008. The transition has not yet occurred, and the Ninth Circuit has encouraged the SSA, along with its sister circuits, "to make the transition to a system that more accurately reflects available jobs in the current economy." *Id.*

Page 3 – OPINION AND ORDER

# DISCUSSION

A.  *Subjective Symptom Testimony*

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must perform two steps of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. The first step is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo*, 871 F.3d at 678. If the claimant has satisfied the first step and there is no evidence that the claimant is malingering, the ALJ must at the second step provide clear and convincing reasons for discounting the claimant's testimony about the severity of her symptoms. *Id*. "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1014-15. The ALJ's findings must be specific enough to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making those credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039.

Plaintiff contends that she cannot engage in full-time, competitive employment because of her physical health conditions—diabetes, kidney failure, high blood pressure, and anemia. (Tr. 73.) At her hearing, plaintiff testified with the assistance of an interpreter that she has been unable to control her diabetes since 2012, and that she has experienced swelling in her feet since 2016. (Tr. 52, 57.) In the summer of 2016, her A1C measurement was 8.6% to 10.0% with varying blood sugars. (Tr. 58.) She tried to work during the relevant period but couldn't because

Page  4  – OPINION AND ORDER

of frequent episodes of dizziness, blurred vision, pain in her feet from neuropathy, and trembling hands preventing her from grabbing things. (Tr. 60.) When she attempted to work, she was unable to stand longer than 15 to 20 minutes due to fatigue, and she needed to sit down for 15 to 30 minutes before standing or walking again. (Tr. 60-61.) Plaintiff testified that she needs to lie down about three times per week for one to two hours at a time due to dizziness and nausea. (Tr. 61-62.) Her dizziness with exertion, difficulty with breathing, worsening symptoms with lifting and carrying, and the inability to lift more than 10 pounds meant that she needed assistance with shopping and household chores. (Tr. 62.)

The ALJ discounted plaintiff's subjective symptom testimony, for two reasons. (1) her activities of daily living are inconsistent with her claimed limitations and (2) her medical records show improvement with treatment and largely normal objective findings during medical appointments.

1.      **Activities of Daily Living**

In finding that plaintiff's statements concerning the severity of her symptoms were not entirely consistent with, among other things in the record, her activities of daily living, the ALJ relied on reports from plaintiff that she can cook simple meals, do laundry, shop in stores, and that she "had no problem with personal care." (Tr. 30-31.)

Plaintiff argues that the ALJ erred in discounting her testimony based on her activities of daily living because the ALJ did not identify activities in which she engaged that were inconsistent with her stated limitations, or that could translate to full-time work. An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal ADLs. *Smartt v. Kijakazi*, 53 F.4th 489, 499-500 (2022); 20 C.F.R. § 404.1529(c)(3)(i). A rejection based on ADLs is supportable in two ways: (1) the ADLs contravene the claimant's

Page 5 – OPINION AND ORDER

allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520(a).

The ALJ improperly relied on plaintiff's ability to perform household chores, prepare simple meals, shop, and attend to personal care. Although plaintiff testified that she can still shop in stores, plaintiff explained that her husband always did the grocery shopping and if she "accompanied him[,] it was to walk to get some exercise." (Tr. 62.) Moreover, plaintiff testified that she was limited in performing household chores and shopping in stores, due to dizziness with exertion. (Tr. 62.) The record reflects that she consistently described those limitations to providers. *See Revels v. Berryhill*, 874 F.3d 648, 667-68 (9th Cir. 2017) (holding that the ALJ erred in relying on claimant's relatively numerous daily activities, where claimant consistently described severe limitations in all her ADLs).

The ALJ also failed to identify any activities that she performs that are inconsistent with her allegations, and failed to explain how any of the cited activities undermined her testimony. Because the ALJ did not explain "*which* daily activities conflicted with *which* part of [plaintiff's] testimony," the ALJ erred. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *Holohan*, 246 F.3d at 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

Here, the ALJ's findings are not supported by substantial evidence because none of the minimal activities described by plaintiff undermine her testimony. Because the ALJ did not connect plaintiff's activities to any symptom or the degree of any symptom alleged by her, this

Page 6 – OPINION AND ORDER

rationale fails to provide a specific, clear and convincing basis on which to discount her subjective symptom testimony. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (holding that general high-level reasons did not satisfy specific, clear and convincing standard because ALJ did not identify which testimony was not credible and which evidence contradicted that testimony); *Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

### 2.     Objective Medical Evidence and Improvement with Treatment

The ALJ also relied on medical evidence and improvement with treatment to discount plaintiff's symptom testimony. As to the medical evidence, the ALJ found that, although observing that plaintiff's diabetes was uncontrolled at times, "on many occasions, [her] diabetes was noted to be controlled with medication and diet." (Tr. 31, citing Tr. 386, 411, 1343.)

Plaintiff asserts that the ALJ mischaracterized the record in evaluating her diabetes testimony by failing to account for her lack of health insurance and inability to afford regular treatment of her diabetes. *See Reddick v. Chater,* 157 F.3d 715, 722-23 (9th Cir. 1998) (the ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). The court agrees.

Although the ALJ is correct that plaintiff's diabetes was documented in medical appointments as "controlled" in 2014 and "presently controlled" in 2015 (Tr. 31, citing Tr. 386, 1343), plaintiff did not confirm her diabetes was "controlled" at the hearing; instead, she stated that "[she] was never able to control the diabetes, neither were the doctors" (Tr. 57). From 2012 to 2013 the record reflects that plaintiff's diabetes was poorly controlled because she did not have health insurance. (Tr. 52.) In September 2013, plaintiff reported that she was only able to check her blood sugars three times per week because healthcare was very expensive for her, and

she was running out of test strips. (Tr. 1318-19.) Plaintiff presented to providers that she was unable to regularly check her blood sugars because she lacked insurance. (Tr. 1321.) The next year, in May 2014, she managed to obtain insurance through the Affordable Care Act. (Tr. 52.) Even so, after obtaining insurance, her diabetes and hypertension were documented repeatedly as "uncontrolled." (Tr. 334, 409, 415, 417, 421, 625, 689-90, 759, 822-23, 840, 846, 871-77, 940, 1349, 1360, 1375.) Lab worked showed that her diabetes was under very poor control with HBA1C at 12.6%. (Tr. 1319.) The ALJ erred by mischaracterizing plaintiff's diabetes as well-controlled.

Furthermore, the ALJ failed to account for plaintiff's symptoms caused by her uncontrolled diabetes. For example, when plaintiff's blood sugar was 126, which was the lowest that Eileen McElligott, RNFP, had ever seen, plaintiff still reported that "she is a little bit dizzy, more when going from a sitting to standing position or when she lies down" and when she lies down, "it feels like the room is swimming." (Tr. 1343.) Plaintiff also reported that when "she goes from a sitting to a standing position, she has to steady herself." (Tr. 1343.) A treatment note from 2015 indicates that plaintiff's vision was worsening due to her diabetes, her vision problems were described as "constant," and she was experiencing blurred vision. (Tr. 386.) Although plaintiff's corrected vision was 20/25, it is a mischaracterization of the record to state that her diabetes is "controlled" when the context of the treatment notes overall shows otherwise. (Tr. 388.)

And the reports of improvement with treatment are modest. Plaintiff's diabetes continued to negatively impact her vision and kidney function, which eventually led to dialysis and a kidney transplant. (Tr. 407-08, 1627.) Although this decline in functioning happened after the relevant period ended in 2016, this medical evidence relates back because it shows that

plaintiff's diabetes was not "controlled with medication and diet" given that she experienced a significant decline after the relevant period. Thus, the overall diagnostic picture reveals waxing and waning diabetes symptoms with generally low levels of overall functioning. *Ghanim*, 763 F.3d at 1164 (explaining that an ALJ may not cherry-pick isolated instances of favorable symptoms when the record reflects longstanding disability).

The ALJ's analysis of plaintiff's subjective symptom testimony is brief, mischaracterized, and unsupported by the record, including a lack of elaboration or citations to support his contentions. Therefore, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's physical symptom testimony.

**B.**     *Medical Expert Testimony*

At the hearing, Dr. Jerry Seligman testified that plaintiff has the following severe impairments: end stage renal disease treated with a transplant, diabetes mellitus, decreased vision acuity, and obesity. (Tr. 54.) In his opinion, plaintiff's impairments did not meet or equal a Listing through the relevant period. (Tr. 54.) He also observed that plaintiff would have visual limitations including that "near acuity would be limited in both eyes, unlimited depth perception accommodation color visions and field of visions." (Tr. 54.) Those limitations would continue to the present, with no significant differences. (Tr. 55.)

Dr. Seligman's opinion was persuasive for the ALJ, who stated that Dr. Seligman's findings were consistent with the record, including "evidence of good symptom control, acceptable corrected vision in spite of retinopathy, acceptable physical findings, and self-reports of good functioning." (Tr. 31, citing Tr. 280-87, 386, 411, 1343.)

Page 9 – OPINION AND ORDER

Plaintiff asserts that the ALJ improperly evaluated Dr. Seligman's medical expert testimony. She points out that she was first noted to have developed kidney insufficiency in May 2014. (Pl. Br. at 9, citing Tr. 334.) Plaintiff explains that her symptoms worsened over time, leading to dialysis in March 2020 and a kidney transplant in April 2022, which in her view is so limiting that the social security administration has determined that those symptoms would meet Listings 6.03 and 6.04 alone or equal in combination. (Pl. Br. at 9.) Because her condition deteriorated significantly after 2016, resulting in a kidney transplant in 2022, Dr. Seligman's opinion that her limitations would not be "significantly different" in 2023 reveals that he misunderstood her medical records or the diabetes listings. (Pl.'s Br. at 9.) According to plaintiff, that misunderstanding undercuts Dr. Seligman's opinion and the ALJ erred in finding it persuasive.

The Commissioner responds that Dr. Seligman's testimony that plaintiff's current functioning is the same as it was from 2012 to 2016 is "immaterial because what is at issue is Plaintiff's functioning during the period at issue." (Def. Br. at 3.) Plaintiff's condition after the date last insured, in the Commissioner's view, is irrelevant. (Def.'s Br. at 3.)

Although Dr. Seligman's statement calls into question the supportability of his opinion, the court need not resolve the parties' debate about his understanding of plaintiff's medical records and the listings because the ALJ committed other errors in evaluating Dr. Seligman's medical expert testimony. For example, the ALJ found Dr. Seligman's opinion consistent with and supported by other medical evidence showing that plaintiff had "good symptom control" (Tr. 31.) As discussed above, the ALJ's finding that plaintiff's diabetes was "controlled with medication and diet" is unsupported by substantial evidence in the record. Further, the ALJ's finding that plaintiff had "acceptable corrected vision" fails to discuss or grapple with Dr.

Page 10 – OPINION AND ORDER

Seligman's assessment that she had vision limitations, including that her near visual acuity is limited in both eyes. (Tr. 54.) The ALJ's discussion of plaintiff's vision difficulties, as noted above, mischaracterized the record and is not supported by substantial evidence in the record. Consequently, the ALJ's similar rationales for finding Dr. Seligman's opinion persuasive likewise are insufficient. The ALJ erred. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (holding that "even under the new regulations," the ALJ's explanation must be supported by substantial evidence).

**C.     *Lay Witness Testimony***

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "cannot be disregarded without comment" (emphasis in original). An ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Nguyen*, 100 F.3d at 1467 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 *(*quoting *Nguyen*, 100 F.3d at 1467)*.* Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63).

In responding to plaintiff's argument that the ALJ erred by failing to consider the testimony of her son, the Commissioner argues that under new regulations governing the

Page 11 – OPINION AND ORDER

evaluation of medical evidence, an ALJ need not provide a reason for rejecting lay witness statements. Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence . *Id.* § 404.1520c(a)-(c). In the Commissioner's view, lay testimony is a "nonmedical source" and ALJ's are not required to articulate how that evidence was considered.

    The court is not persuaded by the Commissioner's argument. The Ninth Circuit has not yet decided whether the regulations relating to medical evidence affect an ALJ's analysis of lay witness testimony. Most district courts in this circuit, however, have concluded that the new regulations do not eliminate an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, Case No. 3:22-cv-05855-GJL, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023*); Gardner v. Comm'r of Soc. Sec. Admin.*, Case No. CV-22-00321-TUC-LCK, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, Case No. 5:23-cv-00006-BFM, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, Case No. 1:22-cv-00013-DKG, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

    The court agrees with the majority view. Although the new regulations do not require ALJ's to analyze nonmedical sources using the same criteria as medical sources, those regulations did not eliminate the ALJ's obligation to review and address lay witness testimony. And the new regulations did not overrule binding Ninth Circuit precedent that an ALJ must address lay witness testimony and provide germane reasons to discount it. *See*

Page 12 – OPINION AND ORDER

790 ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations." (simplified)). Furthermore, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L.S.*, 2023 WL 5611408, at *5. (citing 20 C.F.R. §§ 416.913(a), 416.929(a)). The contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[ ] and the rule [that] the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, Case No. C22-1821-BAT, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

    As plaintiff argues, the ALJ did not address the lay witness testimony, and therefore, erred. The court rejects the Commissioner's argument that the ALJ's error is harmless because the son's statement does not provide any materially different limitations than does plaintiff's testimony. See *Molina*, 674 F.3d at 1118-19 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss lay witness testimony to be prejudicial per se."). The ALJ did not provide legally sufficient reasons to discount plaintiff's subjective symptom testimony and therefore harmfully erred in failing to

consider the lay witness testimony.

**D.   *Step-Five Error***

Because the ALJ committed harmful error by failing properly to evaluate plaintiff's symptom testimony, lay witness testimony, and finding Dr. Seligman's opinion persuasive, the RFC and hypothetical posed to the VE have no evidentiary value; the ALJ thus erred at step five. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." (quotation marks omitted)).

**E.   *Remand***

Within the court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and need not credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Plaintiff satisfies all three parts of the credit as true as true analysis. As explained above, the ALJ failed to provide legally sufficient reasons to reject plaintiff's testimony, lay testimony, and in finding Dr. Seligman's opinion persuasive. If that testimony is credited as true, the ALJ would be required to find plaintiff disabled on remand. Plaintiff testified that between 2012 and 2016, she needed to lie down and rest three times per week for one to two hours at a time due to dizziness and nausea, could not lift or carry more than 10 pounds, could stand for only two hours, had difficulty breathing, and experienced fatigue. (Tr. 61-62.) Those limitations were echoed by her son. The vocational expert testified that plaintiff's need for unscheduled breaks three times per week to lie down for one to two hours would eliminate competitive employment. (Tr. 69-71.)

The Commissioner contends that conflicts in the record prevent remanding for an award of benefits, yet it fails to identify them. Presuming the Commissioner is referring to Dr. Seligman's light work opinion, the court disagrees his testimony requires resolving or that further proceedings would serve a useful purpose. Dr. Seligman's opinion was not consistent with or supported by other medical evidence in the record and even he recognized that plaintiff has limited near vision acuity in both eyes. And because plaintiff was uninsured, additional records are unlikely to be forthcoming on remand. For those reasons, the court sees little value in

Page 15 – OPINION AND ORDER

providing the ALJ a "mulligan" here. *Garrison*, 759 F.3d at 1021; *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

Finally, reviewing the whole record creates no doubt that plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1022-23. When discussing remand, the Commissioner states that the record calls plaintiff's limitations into question, but it does not support that assertion. And the Commissioner does not respond to plaintiff's contention that if her testimony is credited, she is limited to sedentary work, and that she is disabled as of her fiftieth birthday under the Medical Vocational Rule 201.14. (Pl.'s Br. at 8-9.)

In sum, the court concludes that plaintiff satisfies the credit as true test, has no serious doubt that plaintiff is disabled, and that remanding this case for an immediate calculation of benefits is appropriate.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's decision and REMANDS for an immediate calculation of benefits.

ORDERED: December 27, 2024.

/s/ Jeff Armistead
JEFF ARMISTEAD
United States Magistrate Judge